UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

KEVIN DAIVS, Individually, and On Behalf of All Others Similarly Situated,

                        Plaintiff,

    vs.

WILD FRIENDS FOODS, INC,

                        Defendant.

---------------------------------------------------------------x

Civil Action No.: 1:22-cv-4244 (LJL)

FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND NEW YORK CITY HUMAN RIGHTS LAW

DEMAND FOR JURY TRIAL

Plaintiff Kevin Davis ("Plaintiff") brings this class action both on an individual basis and on behalf of all others similarly situated, for declaratory relief, injunctive relief, and compensatory damages—including statutory and punitive damages—against defendant named herein, and alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a visually-impaired and legally blind person[1] who brings this civil rights class action against defendant Wild Friends Foods, Inc., ("Defendant") for its failure to design, construct, maintain, and operate its website to be fully accessible to—and independently usable by—Plaintiff and other blind or visually-impaired people who use screen-reading software. Plaintiff asserts this action individually and on behalf of all other visually-impaired and/or legally blind individuals in the United States who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered on the website during the past three years from the date of the filing of the complaint (the "Class" and "Class Period").

2.      On April 16, 2022, May 6, 2022, May 8, 2022, June 1, 2022, and August 15, 2022, Plaintiff browsed and attempted to transact business on Defendant's website, www.Wildfriendsfoods.com ("website" or "Defendant's website"). The main reason Plaintiff visited the website was to, *inter alia*, purchase organic honey sunflower butter. Defendant sells various healthful snack spreads, such as peanut butter, almond butter and hazelnut spread. The Defendant's website is particularly appealing to consumers as it partners with non-profit

---

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

1

organization which advance the rights of young women in the Pacific Northwest, donating one percent of the profits from sales to these organizations. Defendant also appeals to customers by advertising the ingredients of its snack spreads as ethically sourced and environmentally friendly.

3. Plaintiff is interested in buying one such food on Defendant's website— the Honey sunflower butter. Plaintiff enjoys honeyed butter, is generally interested in organic foods as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food. In particular the Honey Sunflower Butter is marketed as allergen friendly and a healthier eating option because Defendant does not use excess sugar or palm oil in its unique recipe for this delicious snacking option.

4. Unfortunately, Defendant's website is difficult, if not impossible, for visually impaired people to use for purchasing healthful snacking options—such as Honey Sunflower Butter Plaintiff seeks to purchase. For example, the website had the following accessibility issues:

(a) The screen reader fails to access the "search" function on the website, delaying Plaintiff's ability to navigate the website and impeding his ability to make an informed decision as to products to purchase as a sighted New York customer would.

(b) The screen reader fails to indicate the current focus on a given webpage, which disorients Plaintiff as to what information is available on a given page. This delays Plaintiff's ability to navigate the website as a sighted New York customer would.

5. Plaintiff experienced accessibility barriers on each of his visits to the website and barriers continue to exist as of the date of the filing of this amended complaint. Plaintiff remains unable to, but strongly desires and intends to purchase the Organic Honey Sunflower Butter from Defendant's website as soon as the barriers that impede his ability to do so are removed.

6. Defendant and its website violate Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code §§ 8-101 *et seq.*, as the website is not equally accessible to blind and visually-impaired consumers.

7. Plaintiff and the Class bring this action against Defendant seeking, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's NYCHRL claims.

10. Defendant is subject to personal jurisdiction in this District. Defendant operates and distributes its products throughout the United States, including to consumers and others in this District. Organic snack spreads and other products can be directly ordered from Defendant's website for delivery to locations in New York. Plaintiff has been denied the full use and enjoyment of the goods offered on Defendant's website in this District. It was here that Defendant committed a substantial part of the acts or omissions that caused injury to Plaintiff and the Class in violation of the ADA and the NYCHRL.

11. The access barriers that Plaintiff encountered on multiple occasions have caused a denial of Plaintiff's full and equal access to Defendant's website multiple times in the past, and his repeated inability to navigate the website on five separate occasions continues to deter Plaintiff on a regular basis from accessing the Defendant's website to buy Organic Honey Sunflower Butter.

12. This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2), and (c) because: (i) Defendant's unlawful course of conduct occurred in large part in this District; and (ii) Plaintiff attempted to utilize the website in this District.

## PARTIES

**Plaintiff**

14. Plaintiff is a resident of the Bronx, New York. Plaintiff is a blind, visually-impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2) – and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* – and as defined under the NYCHRL.

**Defendant**

15. Defendant is a Corporation registered in Delaware. Defendant conducts business in New York through its website, which is a place of public accommodation as defined under 42 U.S.C. § 12181(7).

## SUBSTANTIVE ALLEGATIONS

**The visually-impaired use screen-readers to access the Internet.**

16. In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million. The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

17. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike. According

to Pew Research, in 2021 three out of ten American adults are almost constantly online, up from approximately two in ten in 2015.  Per a study by the MIT Technology Review published in 2018, the average American spends 23.6 hours of every week online.  According to studies cited by CNBC, as of 2018, Americans spent 234 million hours shopping online during the average workday.  Thus, in today's tech-savvy, instantaneous world of online commerce, blind and visually-impaired people must have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen to enjoy the same convenience and savings allowed by online shopping as sighted New Yorkers.  The technology that aides blind and visually-impaired internet users to do this is known as screen-reading software.[2]

18. Blind and visually-impaired users of Microsoft Windows operating system-enabled computers and devices have several screen-reading software programs available to them.  Some of these programs are available for purchase and other machines have built-in integrated software.  NonVisual Desktop Access, otherwise known as "NVDA" is currently one of the most popular screen-reading software programs available for PCs.

19. Unless websites are designed, properly coded, and updated to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods, and services contained thereon.

---

[2] As defined by the American Federation for the Blind, a refreshable Braille display used in conjunction with a computer can provide a blind person access to information on the computer screen by electronically raising and lowering different combinations of pins on internal cells. These raised pins correspond to, and adapt, as the user moves their cursor over the text on the computer screen.

**A company's website must accommodate the use of screen readers**

20.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

21.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG"). WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually-impaired people. Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually-impaired from enjoying the Internet in the same way sighted individuals do.

**Defendant's website discriminates against the visually-impaired by containing access barriers**

22.     Defendant is an online retail company that owns and operates a website offering numerous products including the Organic Honey Sunflower Butter described in paragraph 3, above. Defendant delivers these products to New York and throughout the United States. Defendant offers its website so that, *inter alia*, the general public can transact business on it.

23.     It is Defendant's policy and practice to deny Plaintiff and the Class access to its website and to specifically deny the goods offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and the Class have been—and currently are—denied equal access to the website and the goods offered thereon.

24.     Plaintiff is visually-impaired and/or legally blind. Plaintiff uses the NVDA screen-reader to access websites on the Internet. As described above, during Plaintiff's repeated visits to Defendant's website—the first occurring on April 16, 2022, and again on May 6, 2022, May 8,

2022, June 1, 2022, and August 15, 2022—Plaintiff encountered the access barriers set forth in paragraph 4 above that denied Plaintiff full and equal access to Defendant's website and the healthy snack spreads sold there. These access barriers were the reason that Plaintiff was repeatedly denied the opportunity to purchase and obtain the full enjoyment of the products offered on the website and purchase the Organic Honey Sunflower Butter to eat and enjoy.

25. Plaintiff maintains a strong desire to purchase the Organic Honey Sunflower Butter, as he is eager to try and enjoy a new brand of healthy, organic foods options for his lunch, dinner or snacking. Plaintiff remains expectant that the accessibility barriers will be cured expeditiously. Plaintiff unequivocally intends to return to the website in order to complete the desired purchase for himself to be able to obtain healthy, organic snack spreads, particularly the Organic Honey Sunflower Butter, as soon as the accessibility barriers are cured, As Defendant's website is available through the Internet, Plaintiff may easily return to the website and purchase the Organic Honey Sunflower Butter once the barriers to accessibility are removed.

**Defendant must remove the website's accessibility barriers**

26. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access on multiple occasions in the past, and now deter Plaintiff from visiting the website—until such barriers are cured—presently and in the future. These access barriers have, on five separate occasions, deterred, and continue to deter, Plaintiff from learning about the various healthy snack spreads available for sale on Defendant's website as would sighted individuals. If the website were equally accessible to all, Plaintiff and the Class could independently navigate the website and complete a desired transaction as sighted individuals do.

27. Plaintiff has actual knowledge of the access barriers that make Defendant's website inaccessible and independently unusable by blind and visually-impaired people based on repeated attempts to purchase Organic Honey Sunflower Butter there. Because simple compliance with the

7

WCAG 2.1 Guidelines would provide Plaintiff and the Class equal access to the website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

(a) constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff and the Class;

(b) failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff and the Class; and

(c) failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers (a protected class), including Plaintiff and the Class.

28. Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendant's website is not equally accessible—and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible—it must retain a qualified consultant acceptable to Plaintiff to assist Defendant to comply with WCAG 2.1 guidelines for its website. Defendant must cooperate with the agreed upon consultant to:

(a) train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

(b) regularly check the accessibility of the website under the WCAG 2.1 guidelines;

(c) regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

(d) develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

29. If the website were accessible, Plaintiff and the Class would be able to independently purchase the healthy comestibles Defendant sells there to enjoy for themselves at mealtime. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its website and has generated significant revenue thereon. The revenues procured by Defendant far exceed the associated cost of making the website equally accessible to visually-impaired consumers.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf of the Class currently defined as: all visually-impaired or legally blind individuals in the United States who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered on the website during the Class Period. Plaintiff also seeks certification of a sub-class of all visually-impaired and/or legally blind individuals in the City of New York who have attempted to access Defendant's website and have been denied access to the equal enjoyment of the goods offered on the website during the Class Period (the "NYC Sub-Class").[3]

31. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

---

[3] The Class and NYC Sub-Class are hereinafter identified, collectively, as "the Class," unless otherwise stated.

32. Upon information and belief, there are hundreds of members in the Class who have suffered from Defendant's conduct complained of herein during the Class Period. Accordingly, joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

33. Common issues of fact or law predominate over individual issues within the meaning of Fed. R. Civ. P. Rule 23(a)(2). Common issues of law and fact include, but are not limited to, whether:

(a) the website is a place of "public accommodation" under the ADA;

(b) the website is a "place or provider of public accommodation" under the NYCHRL; and

(c) the website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA and/or NYCHRL;

34. Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class and the claims arising out of Defendant's common uniform course of conduct are all based upon the same facts and legal theories.

35. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent counsel experienced with class actions and civil rights litigation who intend to vigorously prosecute this action. Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the Class in this action. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

36. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

37. Class members' identities can be identified by Defendant's records. Plaintiff reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

## COUNT I

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, on behalf of Plaintiff and the Class**

38. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

39. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

40. Defendant's website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7). The website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

41. Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in – or benefit from – the products, services, facilities, privileges, advantages, or accommodations of an entity.

42. Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

43. Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes, among other things:

> "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded . . . ."

44. Plaintiff is a member of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

45. Furthermore, Plaintiff has been denied full and equal access to the website, has not been provided goods that are provided to other patrons who are not disabled, and has been provided goods that are inferior to the services provided to non-disabled persons.

46. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

## COUNT II

**Against Defendant for Violations of the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.*, on behalf of Plaintiff and the NYC Sub-Class**

47. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

48. N.Y.C. Administrative Code § 8-107(4)(a) provides that:

> "It shall be an unlawful discriminatory practice for any person, being the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or

employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, the full and equal enjoyment on equal terms and conditions, of any of the accommodations, advantages, facilities or privileges of the place or provide of public accommodation."

49. Defendant's website is a "sales establishment" and "public accommodation" within the definition of N.Y.C. Admin. Code § 8-102(9). Defendant owns and operates its website, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

50. By maintaining a website with accessibility barriers, Defendant violates N.Y.C. Administrative Code § 8-107(4)(a). This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

51. Under N.Y.C. Admin. Code § 8-107(15)(a), Defendant is required to:

"make reasonable accommodation to the needs of persons with disabilities . . . it is an unlawful discriminatory practice for any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

52. Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has constructed and maintained a website with accessibility barriers and failed to take action to fix the access barriers. These violations are ongoing.

53. As such, under § 8-107(4)(a) and/or its implementing regulations, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and the NYC Sub-Class. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the NYC Sub-Class will continue to suffer irreparable harm. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

## COUNT III

**Against Defendant for Declaratory Relief, on behalf of Plaintiff and the Class**

54. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

55. Defendant's website contains access barriers denying blind customers full and equal access to the products  The website violates 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, which prohibit discrimination against the blind.

56. A judicial declaration is, therefore, necessary, and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

(a) awarding Plaintiff statutory money damages, actual damages, and punitive damages, including pre-judgment and post-judgment interest;

(b) granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYCHRL;

(c) providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually-impaired;

(d) certifying the Class and the NYC Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as class representative, and Plaintiff's attorneys as class counsel;

(e) awarding attorneys' fees and costs, and other relief; and

(f) awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 18, 2022                    **MIZRAHI KROUB LLP**

Edward Y. Kroub
Jarrett S. Charo
William J. Downes
200 Vesey Street, 24th Floor
New York, NY  10281
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com
jcharo@mizrahikroub.com
wdownes@mizrahikroub.com

*Attorneys for Plaintiff*