UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/05/2023
```

------------------------------------------------------------------------X
: 
KEVIN DAVIS,                                                             :
                                                                        :
                              Plaintiff,                                :
                                                                        :          22-cv-04244 (LJL)
                   -v-                                                   :
                                                                        :          OPINION AND ORDER
WILD FRIENDS FOODS, INC.,                                                :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Wild Friend Foods Inc. ("Defendant") moves, pursuant to Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the complaint filed by plaintiff Kevin Davis

("Plaintiff") for lack of subject matter jurisdiction and for failure to state a claim for relief.  Dkt.

No. 16.

For the following reasons, the motion to dismiss is denied.

## BACKGROUND

The following facts are drawn from the Plaintiff's first amended complaint ("FAC") and

accepted as true for purposes of these motions.  Dkt. No. 15.

Plaintiff is a visually impaired and legally blind person, who uses screen-reading

software.  *Id*. ¶¶ 1, 14.  Defendant is an online retail company that owns and operates the website

www.Wildfriendsfoods.com (the "Website").  *Id*. ¶¶ 2, 22.  Defendant sells various healthful

snack spreads, such as peanut butter, almond butter, and hazelnut spread including organic honey

sunflower butter.  *Id*.  The Website is particularly appealing to consumers as it partners with non-

profit organizations, which advance the rights of young women in the Pacific Northwest,

donating one percent of the profits from sales to these organizations.  *Id*. ¶ 2.  Defendant also

appeals to customers by advertising the ingredients of its snack spreads as ethically sourced and environmentally friendly. *Id.*

Plaintiff is interested in buying the honey sunflower butter on Defendant's Website. *Id.* ¶ 3. Plaintiff enjoys honeyed butter, is generally interested in organic foods as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food. *Id.* The honey sunflower butter is marketed as allergen friendly and a healthier eating option and does not contain excess sugar or palm oil in its recipe. *Id.*

Plaintiff visited the Website on April 16, 2022, May 6, 2022, May 8, 2022, June 1, 2022, and August 15, 2022. *Id.* ¶¶ 2, 3, 24. Plaintiff alleges that Defendant's website is difficult to use for visually impaired people, *id.* ¶ 4, and he "remains unable to, but strongly desires and intends to purchase the Organic Honey Sunflower Butter from Defendant's website as soon as the barriers that impede his ability to do so are removed," *id.* ¶ 5. Plaintiff specifies that "[t]he screen reader fails to access the 'search' function on the website," delaying Plaintiff's ability to navigate the website and impeding his ability to make an informed decision as to products to purchase as a sighted New York customer would. *Id.* ¶ 4. The Website also "fails to indicate the current focus on a given webpage, which disorients Plaintiff as to what information is available on a given page." *Id.* This also delays Plaintiff's ability to navigate the Website as a sighted New York customer would. *Id.*

Plaintiff alleges that Defendant has violated "Section 302(a) of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*" *Id.* ¶¶ 38–46. Plaintiff also alleges that Defendant has violated "N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has constructed and maintained a website with accessibility barriers and failed to take action to fix the access barriers." *Id.* ¶ 52.

Plaintiff seeks monetary damages and a preliminary and permanent injunction, among other relief. *Id.* at ECF p. 14.

## PROCEDURAL HISTORY

Plaintiff initiated this action through filing a complaint on May 24, 2022. Dkt. No. 1. Plaintiff filed the FAC on August 18, 2022. Dkt. No. 15.

Defendant moved to dismiss the FAC on September 23, 2022 pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 17. On October 7, 2022, Plaintiff filed a memorandum in opposition to the motion to dismiss along with supporting papers. Dkt. Nos. 18–19. On October 14, 2022, Defendant filed a reply memorandum in further support of the motion. Dkt. No. 20. Plaintiff filed letters of supplemental authority on December 1, 2022, Dkt. No. 22, and on December 8, 2022, Dkt. No. 23. On May 9, 2023, Defendant filed a notice of supplemental authority. Dkt. No. 24.

## LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S.*

*Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another

way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also*

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule

12(b)(1) motion first." *Reliability Inc. v. Doki*, 2021 WL 3408589, at *6 (S.D.N.Y. Aug. 4,

2021) (quoting *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, 2020 WL 1151313, at *6

(S.D.N.Y. Mar. 9, 2020)).

The Court thus first addresses the motion to dismiss under Rule 12(b)(1).  Concluding

that the Plaintiff has standing, the Court turns to the motion to dismiss under Rule 12(b)(6).

## I.      Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1)

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the

resolution of 'cases' and 'controversies.'" *Amidax*, 671 F.3d at 145.  "In order to ensure that this

'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their

'standing' as the 'proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte &*

*Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*,

521 U.S. 811, 818 (1997)).  This is "the threshold question in every federal case, determining the

power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d

Cir. 2006).

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has

an injury in fact; (2) that there is a causal connection between his injury and the conduct

complained of; and (3) that his injury will be redressed by a favorable judicial decision."

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022).  "Moreover, a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011). Therefore, in an ADA suit seeking injunctive relief based on lack of adequate access to a public accommodation, "[the Second Circuit has] previously found standing . . . where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue;" and (3) it was reasonable to infer that he or she intends to return to the public accommodation.  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013); *see Guglielmo v. Neb. Furniture Mart, Inc.*, 2020 WL 7480619, at *6 (S.D.N.Y. Dec. 18, 2020) (citing *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 154–55 (2d Cir. 2013)). "In the virtual world, the third requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website."  *Zinnamon v. Satya Jewelry II, LLC*, 2023 WL 3511123, at *2 (S.D.N.Y. Apr. 28, 2023).

In its motion to dismiss for lack of standing, Defendant argues that "Plaintiff is a professional litigant who sues website owners that caused him no actual harm" and "[i]n his capacity as a tester, Plaintiff has filed over fifty nearly identical complaints in which he makes identical allegations about how he supposedly attempted to patronize websites but was denied access."  Dkt. No. 17 at 5.  Defendant contends that, given this litigation history, Plaintiff's allegations that he intended to purchase goods on the Website should not be credited and accordingly Plaintiff has not plausibly alleged an injury in fact. *Id.* at 5–6.  Defendant also notes that while Plaintiff alleges that certain aspects of the website impeded Plaintiff's ability to

navigate the website and make an informed decision as to the products to purchase, "Plaintiff does not, nor can he, allege that any of the alleged barriers actually prevented him from placing an order." *Id.* at 6. Defendant accordingly contends that Plaintiff "was not injured and lacks standing to bring a claim." *Id.*

"The law is clear that testers can have standing" as long as they have suffered an injury in fact. *Harty*, 28 F.4th at 444 n.3; *see Laufer v. Dove Hess Holdings, LLC*, 2020 WL 7974268, at *10 (N.D.N.Y. Nov. 18, 2020) ("[T]he Second Circuit has made clear that a plaintiff's tester status does not necessarily preclude standing."). For example, in *Harty*, the plaintiff was a "'tester' who monitor[ed] whether places of public accommodation and their websites comply with the ADA." *Harty*, 28 F.4th at 440. The Second Circuit in *Harty* held that while testers in general may have standing, a plaintiff's allegations that "'in the near future' he intends to" utilize a website were "not sufficiently imminent to create an injury in fact." *Id.* at 443. The court continued: "'Such "some day" intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the "actual or imminent" injury' that Article III requires." *Id.*; *see also Laufer v. Ganesha Hosp. LLC*, 2022 WL 2444747, at *2 (2d Cir. July 5, 2022) (rejecting the "informational harm" theory that a plaintiff can have standing simply because he was "deprived of information to which he is entitled by the ADA").

Yet, while "a plaintiff's status as a tester, without more, is insufficient to establish a real threat of future harm (and thus standing), a plaintiff may be able to establish standing where the factual allegations plausibly suggest a dual motivation for [plaintiff's] past and future visits to Defendant's public accommodation, *i.e.*, a desire to both test the property for ADA compliance and avail themselves of the goods and services provided." *Harty v. Koutsourades*, 2021 WL

1299495, at *6 (S.D.N.Y. Apr. 7, 2021) (cleaned up); *see also Laufer*, 2020 WL 7974268, at

*10.  In *Harty v. Simon Prop. Grp., Ltd. Partnership*, for example, the plaintiff alleged that he

"plan[ed] to return both as a patron 'to avail himself of the goods and services offered to the

public at the property' and as a tester 'to determine whether the property has been made ADA

compliant.'"  428 F. App'x at 71.  The Second Circuit found the former allegation not

conclusory, and therefore concluded that the "allegations [were] sufficient," regardless of the

plaintiff's tester status.  *Id.*; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982)

(holding that a tester had standing because she alleged that she "suffered [a] specific injury from

the challenged acts" (internal quotation marks omitted)).[1]

   Because a plaintiff's tester status does not preclude standing under the ADA, the fact that

the Plaintiff in this case may be an ADA tester is not dispositive.  Neither is the fact that Plaintiff

may have, as Defendant claims, filed fifty nearly identical complaints.  Dkt. No. 17 at 5.  The

fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of

discrimination that persons with visual impairments face when using the internet.  It is also not

surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff

may have intended to visit and to use over fifty websites.  This fact alone therefore does not

make Plaintiff's allegations of standing any more or less plausible.  *See Chavez v. L2 Liu*, 2021

---

[1] There is a circuit split on whether a self-appointed ADA "tester" has Article III standing to
challenge a place of public accommodation's failure to provide accessible information on its
website even if she lacks the intention of visiting that place in the future.  *See Laufer v. Naranda
Hotels, LLC*, 60 F.4th 156, 166–70 (4th Cir. 2023) (detailing circuit split).  Recently, the
Supreme Court granted certiorari to resolve the circuit split.  *Acheson Hotels, LLC v. Laufer*, 143
S. Ct. 1053 (2023).  Because the Supreme Court has not yet ruled on this issue, the Court is
bound by the law of the Second Circuit in *Harty*, which requires allegations of intent to visit the
place of public accommodation.  *See Supreme Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F.
Supp. 3d 477, 486 (S.D.N.Y. 2014) ("[D]istrict courts and other inferior courts are bound by
decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening
Supreme Court decision or other change in law." (citation omitted)).

WL 1146561, at *3 (E.D.N.Y. Feb. 26, 2021) (concluding that plaintiff established standing

despite the fact that the case was "one of the twelve nearly identical cases plaintiff has filed in

the Eastern District of New York"); *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *29

(S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss for lack of standing even "accept[ing]

[d]efendant's representation that Plaintiff filed 50 other complaints containing similar, if not

identical, allegations against other institutions of higher learning").

Plaintiff has sufficiently alleged that he suffered an Article III injury in fact.  First, the

allegations in the FAC sufficiently plead past injury under the ADA.  Plaintiff alleges that on

"April 16, 2022, May 6, 2022, May 8, 2022, June 1, 2022, and August 15, 2022, Plaintiff

browsed and attempted to transact business on" the Website, specifically to purchase organic

honey sunflower butter.  Dkt. No. 15 ¶ 2.  He further alleges that his ability to purchase organic

honey sunflower butter was impeded by certain accessibility issues on the Website, which made

it "difficult, if not impossible, for" him to purchase the product.  *Id.* ¶ 4.  Those accessibility

barriers were (1) that the "screen reader fail[ed] to access the 'search' function on the Website,

delaying Plaintiff's ability to navigate the Website and impeding his ability to make an informed

decision as to products to purchase as a sighted New York customer would" and (2) failed "to

indicate the current focus on a given webpage, which disorients Plaintiff as to what information

is available on a given page," which in turn "delay[ed] Plaintiff's ability to navigate the website

as a sighted New York customer would."  *Id.*; *see Tavarez v. Moo Organic Chocolates, LLC*,

2022 WL 17094631, at *3 (S.D.N.Y. Nov. 21, 2022) (finding injury-in-fact requirement

sufficiently pleaded where "Plaintiff alleges that he visited Defendant's website on three past

occasions and 'attempted to transact business' but was unable to do so because of at least three

accessibility barriers on Defendant's website"); *see also Sanchez v. NutCo, Inc.*, 2022 WL

846896, at *2 (S.D.N.Y. Mar. 22, 2022) (finding plaintiff sufficiently pleaded past injury where

he claims he was unable to purchase product due to barriers on website); *see also John v. Whole*

*Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("We have repeatedly described [the

injury-in-fact] requirement as a low threshold." (internal quotation marks and citation omitted)).

This conclusion is not affected by the fact that "neither of [the] alleged 'barriers'"

completely prevented Plaintiff "from using the website or purchasing a product."  Dkt. No. 17 at

10.  "Under the ADA, the barrier 'need only interfere with the plaintiff's full and equal

enjoyment of the facility'—'it is not necessary for standing purposes that the barrier completely

preclude the plaintiff from entering or from using a facility in any way.'"  *Brown v. Mermaid*

*Plaza Assocs. LLC*, 2018 WL 2722454, at *7 (E.D.N.Y. Mar. 8, 2018) (quoting *Feltenstein v.*

*City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017)).  "Courts have [thus] found

that, even where the physical or other barriers in question have not entirely prevented disabled

plaintiffs from visiting or receiving services offered at a public accommodation, such that the

plaintiffs can continue to visit the facility even with those barriers in place, the plaintiffs still

have standing to sue under the ADA, when the barriers render their use of the facility more

difficult, burdensome, or dangerous than it would be for individuals who are not disabled."

*Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 WL 851918, at *4 (S.D.N.Y. Mar. 28,

2008).

The Court also rejects the argument that Plaintiff's allegations of injury fail as Plaintiff

has not proffered any evidence of injury.  Dkt. No. 20 at 3.  Specifically, Defendant notes that

while Plaintiff submitted an expert report by Robert Moody, in opposition to the motion to

dismiss, that expert report only addresses access barriers on the Website that were not mentioned

in the FAC.  *Id.* at 2–3.  "But while a district court may refer to evidence outside the pleadings

when resolving a 12(b)(1) motion, it is not invariably required to consider such evidence.  It is

only where jurisdictional facts are placed in dispute that the court has the obligation to decide

issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th

at 441 (cleaned up).  And, contrary to Defendant's claims, Defendant has not offered evidence

placing Plaintiff's allegations that he has suffered an injury in dispute.  Defendant points to

evidence of the Website itself and counters that "[e]very product on the website has a text

description that can be read by any screen-reading software," and "each of the links on the

website, including links to purchase specific products, have an associated 'label' or 'button'" for

screen readers. Dkt. No. 17 at 10.  But, while these various features of the Website may make it

easier for a visually impaired person to navigate the Website, they do not necessarily mean that

specific barriers alleged in the FAC do not render use of the Website more difficult and

burdensome for visually impaired persons than seeing persons.  For example, even though the

products all have a text description and the links have associated labels, the failure of the screen-

reader to access the search function may make it more difficult for a blind or visually impaired

person to locate the products in which he or she may have an interest.  Dkt. No. 15 ¶ 4; *see, e.g.*,

*Angeles v. Grace Prods. Inc.*, 2021 WL 4340427, at *2 (S.D.N.Y. Sep. 23, 2021) (concluding

that a plaintiff established standing because, *inter alia*, she alleged that "(1) her screen-reading

software was unable to discern which products were on the screen and distinguish between

different screens on the website due to the failure of the website to adequately describe its

content and (2) she encountered problems with broken links that prevented her from using the

screen reader to return to her search"); *Jaquez v. Dermpoint, Inc.*, 2021 WL 2012512, at *1

(S.D.N.Y. May 20, 2021).  Defendant's evidence therefore does not place Plaintiff's allegations

in dispute and accordingly Plaintiff is not obliged to present its own evidence undercutting that

evidence.  The Court may rely on the allegations in the FAC and assume their truth.[2]  *Robinson*, 269 F.3d at 140.

Plaintiff also has sufficiently alleged that the discriminatory treatment will continue.  He alleges that "[he] remains unable to, but strongly desires and intends to purchase the Organic Honey Sunflower Butter from Defendant's website."  Dkt. No. 15 ¶ 5.  He alleges that he "browsed and attempted to transact business on Defendant's website" multiple times from April 2022 to August 2022, *id.* ¶ 2, but the Website still contains barriers, *id.* ¶ 4.  This is sufficient to support that the discriminatory treatment will continue.  *See Tavarez*, 2022 WL 17094631, at *4 ("[I]t is reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *Camacho*, 2019 WL 6528974, at *10 (Allegations that plaintiff "visited the Website on multiple occasions and has not been able to access its content" "supports an inference that the Website has not been altered to fix the barriers Plaintiff encountered, and that he will continue to be unable to access the Website.").

Finally, Plaintiff has sufficiently pleaded intent to return.  "[T]he focus of the third factor—*i.e.*, intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing."  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74–75 (2d Cir. 2022) (citation omitted).  "Thus, the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat

---

[2] For the same reasons, the Court rejects Defendant's argument at this stage that the allegations in the FAC are implausible because neither of the alleged barriers prevented plaintiff from using the Website or purchasing a product.  Dkt. No. 17 at 10.  That issue will have to await summary judgment.

of future injury.'"  *Id.* at 75 (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021)).  Although the Court must "generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Id.* (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 417).

In *Calcano*, the Second Circuit found "a mere 'profession of an intent to return to the places' previously visited is 'not enough' to establish standing."  36 F.4th at 78 (2d Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).  In that case, the Circuit dismissed five nearly identical complaints in which plaintiffs sued defendant stores under the ADA for failing to carry braille gift cards.  *Id.* at 71–72.  The Court noted that the allegations did not support a plausible inference that the plaintiffs intended to return to the stores for the gift cards in order to support standing as the plaintiffs "offered only 'naked assertions' of intent to return to [d]efendants' stores if they offer braille gift cards."  *Id.* at 77–78 (citation omitted).  Specifically, the court noted that the complaints did not provide "any details about [the plaintiffs'] past visits or the frequency of such visits"; they did not "specify which stores they visited or what items they purchased"; and they did not "say why they want to purchase braille gift cards . . . so urgently."  *Id.* at 76–77.  The Circuit concluded: "reliance on a mere 'profession of an intent to return to the places' previously visited is 'not enough' to establish standing for prospective relief."  *Id.* at 78.

Here, the allegations concerning intent to return are significantly more detailed than in *Calcano*.  Plaintiff alleges more than profession of an intent to return to the Website. Specifically, Plaintiff provides details about his past visits to the Website, including what item he hoped to purchase.  He also alleges that he has visited the Website on five prior occasions in

13

order to purchase organic honey sunflower butter and details the dates of those visits.  Dkt.
No. 15 ¶ 2.  From Plaintiff's allegations, it is plausible that he, in fact, intends to return to the
Website.  The product in question is designed to appeal to consumers in general and is one that
would be purchased on a website.  Plaintiff alleges that he enjoys honeyed butter, is generally
interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a
healthy and tasty new food.  *Id.* ¶ 3.  The FAC alleges why Plaintiff would be interested in this
honey butter in particular.  Defendant's honey sunflower butter, according to the FAC, is a
distinctive product.  The FAC states that it "is marketed as allergen friendly and a healthier
eating option because Defendant does not use excess sugar or palm oil in its unique recipe for
this delicious snacking option."  *Id.*  These allegations are sufficient to plausibly allege intent to
return to establish standing.  *See Guerrero v. Ogawa USA Inc.*, 2023 WL 4187561, at *3
(S.D.N.Y. June 26, 2023) (plaintiff had shown intent to return where the "verified FAC states
Guerrero wants to purchase a unique, differentiated and highly valuable Ogawa product and has
tried to do so on three specific dates."); *Tavarez*, 2022 WL 17094631, at *4 (concluding that
allegations of prior times "Plaintiff accessed Defendant's website, the specific product Plaintiff
allegedly seeks to buy, his habit of consuming chocolate, and characteristics of Defendant's
Almond Mini Bars that he finds attractive" sufficient to establish intent to return); *Walters v.
Fischer Skis U.S., LLC*, 2022 WL 3226352, at *4 (N.D.N.Y. Aug. 10, 2022) ("It is reasonable to
infer, based upon Plaintiff's history as a skier and his interest in the sport, that he will plan
another ski trip and will return to the site to purchase new equipment.").

　　　　Plaintiff has thus pleaded enough to establish standing for purposes of its ADA claim.
Because Plaintiff's New York City claims are "governed by the same standing requirements as
the ADA," *Mendez v. Apple Inc.*, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019); *see*

*Calcano v. Cole Haan LLC*, 2021 WL 849434, at *3 (S.D.N.Y. Mar. 5, 2021), he also

sufficiently alleges standing under the New York City Human Rights Law, N.Y.C.

Administrative Code §§ 8-101 *et seq*.

## II.   Motion to Dismiss the ADA Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

To state a claim under Title III of the ADA, a plaintiff must allege that "(1) she is

disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public

accommodation; and (3) defendants discriminated against her by denying her a full and equal

opportunity to enjoy the services defendants provide." *Thorne v. Boston Mkt. Corp*., 469 F.

Supp. 3d 130, 139 (S.D.N.Y. 2020) (citing *Wu v. Jensen-Lewis Co*., 345 F. Supp. 3d 438, 442

(S.D.N.Y. 2018)).  "With respect to the third element, 'a plaintiff can base a disability

discrimination claim on any of three available theories: (1) intentional discrimination (disparate

treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Jones v.

Thomas*, 2020 WL 5077026, at *3 (S.D.N.Y. Aug. 27, 2020) (quoting *Brief v. Albert Einstein

Coll. of Med*., 423 Fed. App'x. 88, 90 (2d Cir. 2011)); *see also Lopez v. City of New York*, 2017

WL 4342203, at *10 (S.D.N.Y. Sept. 28, 2017), *report and recommendation adopted*, 2018 WL

1371164 (S.D.N.Y. Mar. 15, 2018).  "To bring a reasonable accommodation claim, a plaintiff

must show '(1) [ ]he suffers from a disability (2) known to the defendant, for which (3) a

reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the

defendant refused the accommodation.'" *Jones v. Thomas*, 2020 WL 5077026, at *3 (S.D.N.Y.

Aug. 27, 2020) (quoting *Lopez v. New York City Dep't of Homeless Servs.*, 2019 WL 3531955, at

*4 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, 2019 WL 4593611 (S.D.N.Y.

Sept. 23, 2019)).

Defendant does not dispute that Plaintiff has pleaded the first two elements of a claim under Title III of the ADA.  Because the two elements are not disputed, the Court does not address them.  *See Paguada v. YieldStreet Inc*., 2021 WL 4896278, at *4 (S.D.N.Y. Oct. 20, 2021) (refusing to address the question whether a website is a place of public accommodation because "the parties do not dispute that the Complaint alleges the first two elements of an ADA claim").  Defendant does, however, dispute that Plaintiff has pleaded the third element. Defendant states that Plaintiff has failed to allege that he requested a reasonable modification of the website that was subsequently refused.  Dkt. No. 17 at 11.  In response, Plaintiff does not contest that he has not pleaded enough for a reasonable accommodation claim, but states that he has properly pleaded intentional discrimination or disparate impact—alternative theories by which a plaintiff may show the third element of a claim for discrimination under the ADA.  In its reply, Defendant notes that this is an improper attempt to reframe the allegations of the FAC, which only pleads failure to accommodate.  Dkt. No. 20 at 5–6.

To start, the Court disagrees with Defendant that Plaintiff cannot now rely on an intentional discrimination or disparate impact theory of discrimination.  Although the FAC notes that failure to make reasonable modifications may be one method of showing discrimination, the FAC does not specify what theory of discrimination Plaintiff relies on in asserting a claim under Title III of the ADA.  Instead, it merely alleges: "Plaintiff has been denied full and equal access to the website, has not been provided goods that are provided to other patrons who are not disabled, and has been provided goods that are inferior to the services provided to non-disabled persons."  Dkt. No. 15 ¶¶ 43, 45.  It further states that Defendant "uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein."  *Id.* ¶ 28.

Plaintiff is not obligated under the Federal Rules of Civil Procedure to plead the exact theory of liability that it relies on, as long as the complaint gives full notice of the circumstances that give rise to the claim for relief.  "As the Second Circuit has noted, 'the Rules do not require a plaintiff to plead the legal theory . . . underlying his claim.'"  *Hamilton v. Westchester Dep't of Corr.*, 2020 WL 4271709, at *5 (S.D.N.Y. July 23, 2020) (quoting *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)); *see Topever Corp. v. ENE Grp. LLC*, 2013 WL 822378, at *4 (S.D.N.Y. Mar. 6, 2013) ("[G]enerally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." (quoting *Simonton v. Runyon*, 232 F.3d 33, 36–37 (2d Cir. 2000)).

The question remains whether Plaintiff has pleaded enough to give rise to a plausible claim of intentional discrimination or disparate impact.  "To state a claim for intentional discrimination, or disparate treatment, under the ADA, [Plaintiff] 'must present evidence that animus against the protected group was a significant factor in the position taken' by Defendant[]."  *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 343 (S.D.N.Y. 2010); *see Al Dey v. Eye Express Optical*, 2022 WL 3348524, at *3 (S.D.N.Y. Aug. 12, 2022).  "As for disparate impact, '[t]o establish a prima facie case under this theory, the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'"  *McCulloch v. Town of Milan*, 559 F. App'x 96, 99 (2d Cir. 2014) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53 (2d Cir. 2002)); *see also Williams v. Barometre*, 2022 WL 903068, at *17 (S.D.N.Y. Mar. 28, 2022).  "'Although the plaintiff need not show discriminatory intent under this theory, it must prove that

the practice actually or predictably results in discrimination' as well as a 'causal connection between the policy at issue and the discriminatory effect.'"  *Abrahams v. MTA Long Island Bus*, 2010 WL 2134288, at *5 (E.D.N.Y. May 25, 2010), *aff'd on other grounds*, 644 F.3d 110 (2d Cir. 2011) (citation omitted).  "At the summary judgment stage, a plaintiff may be 'required to include statistical evidence to show disparity in outcome between groups.'"  *Williams v. Barometre*, 2022 WL 903068, at *17 (S.D.N.Y. Mar. 28, 2022) (quoting *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016)).  "But at the pleadings stage, where the Court now finds itself, 'it is reasonable to expect that plaintiffs pleading disparate impact claims must [only] include at least one allegation that raises an inference of such disparity—one sufficient to put the defendants on notice regarding the basis for [the] plaintiffs' belief in a disparate effect.'"  *Id.* (quoting *Doherty v. Bice*, 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020)).[3]

The allegations in the FAC do not support that animus against visually impaired persons was a significant factor in Defendant's actions.  The allegations at most indicate that portions of the Website were not *wholly* accessible to visually impaired persons.  Dkt. No. 15.  They do not

---

[3] When a claim is better categorized as a disparate impact claim versus a reasonable accommodation claim is not entirely clearcut.  As the Ninth Circuit has stated in the context of Title II ADA claims, "Although disparate impact and failure to accommodate are distinct theories of liability, they share some overlap."  *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021).  The Ninth Circuit continued: "The important difference between these two theories is that a reasonable accommodation claim is focused on an accommodation based on an individualized request or need, while a reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility."  *Id.*  The Second Circuit has also noted that a reasonable accommodation claim, unlike a disparate impact claim, is not conditioned on proof that other individuals received more favorable treatment.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003).  The Seventh Circuit has distinguished the two theories noting:  "[T]his is not a disparate treatment claim, but a reasonable accommodation claim, and it must be analyzed differently.  Bultemeyer is not complaining that FWCS treated him differently and less favorably than other, non-disabled employees.  He is not comparing his treatment to that of any other FWCS employee.  His complaint relates solely to FWCS' failure to reasonably accommodate his disability."  *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996).

indicate that this was caused in part by animus toward visually impaired persons.  In fact, based on the allegations in the FAC, the Website appears to be largely compatible with screen reader technology and thus "[i]f anything, these facts suggest an attempt to accommodate a disability." *Kellier v. Billups*, 2021 WL 2435556, at *4 (S.D.N.Y. June 14, 2021); *see also Smith v. NYCHA*, 410 F. App'x 404, 406 (2d Cir. 2011) (dismissing intentional discrimination claim where "Smith has failed to identify any prohibited motive attributable to the New York City Housing Authority"); *Barometre*, 2022 WL 903068, at *17 ("'[N]o allegations support the belief that Defendants acted with Plaintiff's alleged disability in mind,' foreclosing Plaintiff's ability to allege a claim under a theory of disparate treatment." (citation omitted)).

However, "intent to discriminate" is not a necessary an element of a Title III claim, *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 96 (2d Cir. 2012), and the FAC does state enough to plausibly plead disparate impact.  "Where a plaintiff challenges a program's policy or practice of failing to remedy systemic barriers, rather than the individual's experience with requesting accommodations to address those barriers, this type of claim is [] appropriately evaluated under the disparate impact framework." *Shavelson v. California Dep't of Health Care Servs.*, 2021 WL 4261209, at *1 (N.D. Cal. Sept. 20, 2021) (quoting *Payan v. Los Angeles Community College District*, 2021 WL 3730692, at *8 (9th Cir. 2021)).  Here, Plaintiff alleges that systematic accessibility barriers on the Website negatively impact the ability of all visually impaired users who rely on screen readers to access the Website to purchase goods.  Specifically, Plaintiff alleges that due to the Website's design, the screen reader fails to access the "search" function on the Website and fails to indicate the current focus on a given webpage, which makes "Defendant's website [ ] difficult, if not impossible, for visually impaired people to use for purchasing healthful snacking options." Dkt. No. 15 ¶ 4.  It also contends that "access barriers

that Plaintiff encountered on multiple occasions have caused a denial of Plaintiff's full and equal access to Defendant's website multiple times in the past, and his repeated inability to navigate the website on five separate occasions continues to deter Plaintiff on a regular basis from accessing the Defendant's website to buy Organic Honey Sunflower Butter."  *Id.* ¶ 11.  "While the [FAC] only mentions Plaintiff specifically, 'it is a reasonable inference that [other visually impaired persons] were adversely affected' in an analogous way by" Defendant's Website. *Barometre*, 2022 WL 903068, at *17 (S.D.N.Y. Mar. 28, 2022) (quoting *Doherty v. Bice*, 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020)).  The FAC thus plausibly states a claim for disparate impact at this early stage of the case.  *See Payan*, 11 F.4th at 739 (holding that claim based on accessibility barriers on website could appropriately be considered under the disparate impact framework).

This holding is consistent with the decisions of other courts in this District which have held that similar allegations plausibly plead a claim under Title III of the ADA.  For example, in *Jaquez v. Dermpoint*, the court held that allegations that the "website does not provide information about image color to the screen-reading software, that individuals using that software are unable to add items to their online shopping cart, and that the website's accessibility icon is hard to find" "plausibly show that Dermpoint discriminated against Jaquez by denying him a full and equal opportunity to use its website."  2021 WL 2012512, at *2.  Similarly, in *Thorne v. Formula 1 Motorsports, Inc.*, the court concluded that allegations that "Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links" states a plausible claim that Formula 1's website discriminates against him within the meaning of the ADA.  2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019); *see also Loadholt v. Shirtspace*, 2023 WL 2368972, at *4 (S.D.N.Y. Mar. 6, 2023); *Young v. Metro.*

*Learning Inst., Inc.*, 2023 WL 1928001, at *4 (S.D.N.Y. Feb. 10, 2023) (holding that the

"[p]laintiff has plausibly alleged that Defendant failed to provide equal access to the contents of

the website due to its incompatibility with his screen reader software").  The court in *Guerrero v.*

*Ogawa USA, Inc.* also held that similar allegations were sufficient to plausibly state a claim and

stated "[c]ontrary to Defendant's argument, Plaintiff does not need to have requested an

accommodation before filing this suit because the FAC states a claim on the first two theories of

liability, disparate treatment and disparate impact."  2023 WL 4187561, at *6.

This conclusion is also not inconsistent with the cases that Defendant cites in support of

its motion.  In each of those cases, the court merely held that a defendant must be given notice of

a plaintiff's disability for purposes of a reasonable accommodation claim under Title III of the

ADA.  *See Schoengood v. Hofgur LLC*, 2021 WL 1906501, at *5 (E.D.N.Y. May 12, 2021)

(concerning policies at an assisted living facility during the COVID-19 pandemic); *Castillo v.*

*Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (concerning no-outside-food

policy at a theater).  Those cases did not hold that a defendant must be given notice of a

plaintiff's disability for purposes of a disparate impact or intentional discrimination claim.  The

Court therefore declines to dismiss Plaintiff's ADA claim.

### III.  The Motion to Dismiss the NYCHRL Claim Pursuant to Federal Rules of Civil Procedure 12(b)(6)

Having established that Plaintiff's ADA claim was sufficiently alleged, the Court holds

that his NYCHRL claim is also sufficiently alleged.  ADA is "'a *floor* below which the City's

Human Rights law cannot fall,'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d

102, 109 (2d Cir. 2013) (quoting *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 278 (2d

Cir. 2009)).  In other words, "because the NYCHRL is more protective than its state and federal

counterparts, a claim is automatically stated under the NYCHRL if it is stated under the federal

and state statutes." *Chalas v. Barlean's Organic Oils, LLC*, 2022 WL 17156838, at *4

(S.D.N.Y. Nov. 22, 2022).  Therefore, Plaintiff's NYCHRL claim based on the same factual

allegations is sufficiently pleaded.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 16.


SO ORDERED.


Dated: July 5, 2023                                     _____
       New York, New York                                        LEWIS J. LIMAN
                                                           United States District Judge